## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **KENNETH WAYNE JAMAR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-08-S-1145-NE** |
| | ) | |
| **THE UNITED STATES OF** | ) | |
| **AMERICA,** *et al.*, | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This action arises from severe personal injuries suffered by plaintiff, Kenneth Wayne Jamar, during a shooting incident that occurred when federal, state, and local law enforcement officers mistakenly executed a search warrant at his home.[1]  Plaintiff alleges claims under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*., as well as constitutional claims under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and rounds out his complaint with supplemental state-law claims for negligence, wantonness, trespass, invasion of privacy, outrageous conduct, assault, and battery.  *See* 28 U.S.C. § 1367(a).[2]

---

[1] *See* doc. no. 1 (complaint) and doc. no. 61 (amended complaint).

[2] With jurisdiction over federal claims, district courts also have jurisdiction to adjudicate state law claims that arise out of "a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).  Formerly known as ancillary and pendent jurisdiction, "supplemental jurisdiction" under 28 U.S.C. § 1367 permits both pendent claim and pendent party

This opinion addresses the motion to strike plaintiff's punitive damage claims filed by the City of Huntsville, Alabama, a municipal corporation,[3] as well as five motions to dismiss filed by the following defendants:  (*i*) the City of Huntsville, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6);[4] (*ii*) Huntsville Police Department Captain Rodney Baker and uniformed patrol officers Larry Shield, Robert DeNoon, Scott Widner, and Matthew Montague, pursuant to Rule 12(b)(6);[5] (*iii*) Drug Enforcement Administration Agent Francis J. "Rocky" Harnen, Jr., pursuant to Rule 12(b)(6);[6] (*iv*) Alabama Bureau of Investigation Agent Russell Morrison, pursuant to Rule 12(b)(6);[7] and (*v*) the United States of America, pursuant to Rules 12(b)(1) and (6).[8]

---

jurisdiction.  28 U.S.C. § 1367 changed "the preexisting law in that it makes supplemental jurisdiction mandatory, not discretionary."  Erwin Chemerinsky, *Federal Jurisdiction* § 5.4, at 317 (2d ed. 1994).

[3] *See* doc. no. 65.

[4] *See* doc. no. 62.

[5] *See* doc. no. 68.

[6] *See* doc. no. 73.

[7] *See* doc. no. 75.

[8] *See* doc. no. 70.  This court previously advised the parties that the portion of the motion to dismiss by the United States that relied on Federal Rule of Civil Procedure 12(b)(6) was converted to a Rule 56 motion because that portion of the motion was supported by a declaration of non-party Drug Enforcement Administration Agent Gregory Borland.  *See* doc. no. 79.  Consequently, the Rule 12(b)(6) arguments supported by the declaration of Agent Borland will not be addressed in this opinion.

## I. STANDARDS OF REVIEW

**A**.     **Rule 12(b)(1)** — *dismissal for lack of subject-matter jurisdiction*

Federal Rule of Civil Procedure 12(b)(1) provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion:  (1) lack of subject-matter jurisdiction . . . ."  Fed. R. Civ. P. 12(b)(1).

When considering a motion to dismiss based upon this rule, the court must first determine whether the moving party is mounting a "facial" or "factual" attack on the court's subject-matter jurisdiction.  The former Fifth Circuit explained the difference, and the resulting effect on the district court's framework of analysis, in *Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981),[9] saying that:

> A motion to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1), can be based on the lack of jurisdiction *on the face of the complaint*.  If so, the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised — the court must consider the allegations in the plaintiff's complaint as true.  *E.g., Spector v. L Q Motor Inns, Inc.*, 517 F.2d 278, 281 (5th Cir. 1975); *Herpich v. Wallace*, 430 F.2d 792, 802 (5th Cir. 1970).  But the two motions are treated quite differently when matter outside the complaint is the basis of the attack.  Rule [12(**d**)[10]] provides that a motion to dismiss for failure to state a claim

---

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[10] The *Williamson* opinion referenced Federal Rule of Civil Procedure 12(**b**), which was a correct citation on the date the opinion was entered.  The relevant portion of Rule 12(b) then read

will be automatically converted into a motion for summary judgment (Rule 56) if the court considers matters outside the pleadings.  This provides an additional safeguard for the plaintiff, for, in addition to having all his allegations taken as true, the trial court cannot grant the motion unless there is no genuine issue of material fact.  This protection is not, however, provided the plaintiff who faces dismissal for lack of subject matter jurisdiction.  As the Court of Appeals for the Third Circuit has explained:

> The facial attack (on subject matter jurisdiction) does offer similar safeguards to the plaintiff:  the court must consider the allegations of the complaint as true.  The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56.  Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction — its very power to hear the case — there is substantial authority that the trial court is free to weigh the evidence and satisfy itself

---

as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

*Williamson v. Tucker*, 645 F.2d 404, 412 n.5 (5th Cir. 1981) (quoting Fed. R. Civ. P. 12(b)).  However, between May 20, 1981, when *Williamson* was handed down, and the present date, Rule 12 was amended, and the text from Rule 12(b) referenced in *Williamson* was both revised and moved from Rule 12(**b**) to Rule 12(**d**), which reads as follows:

> **(d) Result of Presenting Matters Outside the Pleadings**.  If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all material that is pertinent to the motion.

Fed. R. Civ. P. 12(d) (2008).

4

> as to the existence of its power to hear the case.  In short,
> no presumptive truthfulness attaches to plaintiff's
> allegations, and the existence of disputed material facts
> will not preclude the trial court from evaluating for itself
> the merits of jurisdictional claims.

*Williamson*, 645 F.2d at 412-13 (quoting *Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 884, 891 (3rd Cir. 1977)) (footnote omitted) (emphasis added); *see also Barnett v. Okeechobee Hospital*, 283 F.3d 1232, 1237-38 (11th Cir. 2002); *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (*per curiam*).

**B**.    **Rule 12(b)(6)** — *dismissal for failure to state a claim on which relief can be granted*

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  This rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).[11]  While that  pleading

---

[11] With few exceptions (fraud claims being one, *see* Fed. R. Civ. P. (9)(b)), there are only three requirements for pleading a claim in a federal action:  "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . ., (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks."  Fed. R. Civ. P. 8(a).  "There are two other provisions of Rule 8 that are pertinent:  'Each averment of a pleading shall be simple, concise, and direct.  No technical forms of pleading are required.'  Fed. R. Civ. P. 8(e)(1); and 'All pleadings shall be so construed as to do substantial justice.'  Fed. R. Civ. P. 8(f)."  *Gorski v. New Hampshire Dept. of Corrections*, 290 F.3d 466, 473 n.5 (1st Cir. 2002).  As the Eleventh Circuit observed in *Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364 (11th Cir. 1997),

standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 544 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1949 (2009) (citations omitted).

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S. at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557.

> To survive a motion to dismiss [founded upon Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops

---

> [t]he purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the statement of [a plaintiff's] claim for relief. It is read alongside Fed. R. Civ. P. 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The rule is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto. . . .

*Id*. at 1368-69 (citation omitted); *see also Conley v. Gibson*, 355 U.S. 41, 47-48 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").

6

short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*, at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  490 F.3d, at 157-158.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations.  *When there are well-pleaded factual allegations*, *a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.*

*Ashcroft v. Iqbal*, 556 U.S. at —, 129 S. Ct. at 1949-50 (emphasis added).

7

Such pleading standards may be heightened, however, with respect to some claims asserted on the basis of 42 U.S.C. § 1983.  When determining whether increased specificity is required, a distinction must first be drawn between the pleading requirements for § 1983 claims asserted against, on the one hand, *state or municipal governmental entities* and, on the other hand, *individual governmental officials* sued personally, "in their individual capacities."  With regard to the former category of claims, the Supreme Court has held that a court may not impose a pleading requirement that is "more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure" to claims asserted against state or municipal governmental entities under § 1983.  *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993). The *Leatherman* Court instructed federal courts to use the mechanisms of summary judgment and discovery to "weed out unmeritorious claims" against state or municipal governmental entities, and affirmed that notice pleading is all that is required for claims of *municipal liability* under § 1983.  *Id.* at 168.[12]

On the other hand, the *Leatherman* Court specifically declined to extend its holding to claims against *individual governmental officials*.  *See id.* at 166-67 ("We thus have no occasion to consider whether our qualified immunity jurisprudence

---

[12] Even so, a plaintiff must at least put the municipality *on notice* of the particular custom or policy that is alleged to have caused the plaintiff's injury.  *See Leatherman*, 507 U.S. at 168.

would require a heightened pleading in cases involving individual government officials."). The Court's subsequent decision in *Crawford-El v. Britton,* 523 U.S. 574 (1998), also did not consider that issue. That opinion reaffirmed the Court's refusal to "revise established rules that are separate from the qualified immunity defense," including "requiring pleadings of heightened specificity *in cases alleging municipal liability,*" *id.* at 595 (citing *Leatherman,* 507 U.S. at 164-69) (emphasis supplied), and did not discuss the pleading requirements for cases involving the personal liability of *individual government officials.*[13]

Thus, because *Leatherman* and *Crawford-El* do not require a contrary result, "the heightened pleading requirement [remains] the law of this circuit" with regard to a plaintiff's § 1983 claims against individual governmental actors. *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1368 (11th Cir. 1998). *See also, e.g., Gonzalez v. Reno,* 325 F.3d 1228, 1235 (11th Cir. 2003) ("In examining the factual allegations in the complaint, we must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity."); *Dalrymple v. Reno,* 334 F.3d 991, 996 (11th

---

[13] *See also Swierkiewicz v. Sorema,* 534 U.S. 506 (2002), holding in the context of a suit brought under Title VII of the Civil Rights Act of 1967, and the Age Discrimination in Employment Act of 1967, that "the Federal Rules do not contain a heightened pleading standard for employment discrimination suits." *Swierkiewicz,* 534 U.S. at 515. That holding has no bearing on a claim against an individual government official pursuant to 42 U.S.C. § 1983.

9

Cir. 2003) (same); *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992) ("[W]e want to use this opportunity to repeat that, 'in an effort to eliminate nonmeritorious claims on the pleadings and to protect public officials from protracted litigation involving specious claims, we . . . have tightened the application of Rule 8 to § 1983 cases.'") (quoting *Arnold v. Board of Education of Escambia County*, 880 F.2d 305, 309 (11th Cir. 1989)).

## II. THE INDIVIDUAL DEFENDANTS

The individual defendants whose motions to dismiss are addressed in this opinion are described in plaintiff's amended complaint as follows:  Francis J. "Rocky" Harnen ("Agent Harnen") was a special agent with the United States Drug Enforcement Administration ("DEA");[14] Russell Morrison was an officer with the Alabama Bureau of Investigation ("ABI") who acted at all times material to this action as an "an authorized federal agent of the DEA";[15] Eddie McDaniel was a Deputy Sheriff employed by the Madison County, Alabama, Sheriff's Department who acted under the control of the United States government as a member of the "Huntsville-Madison County Strategic Counterdrug Team ('STAC')";[16] and, Larry

---

[14] *See* doc. no. 61 (amended complaint) ¶ 6.

[15] *Id*. ¶ 7.

[16] *Id*. ¶ 8.  As of the date of this opinion, Deputy Sheriff McDaniel has not filed a motion to dismiss.

10

Shields, Scott Widner, Rodney Baker, Robert DeNoon, and Matthew Montague were members of the Huntsville, Alabama, Police Department's Special Weapons and Tactics team ("the Huntsville SWAT team defendants") who were acting under the control of the United States.[17]

### III.  THE ALLEGATIONS OF PLAINTIFF'S COMPLAINT

Plaintiff alleges that on June 23, 2006, DEA Agent Rocky Harnen obtained a search warrant for the home of a person named Jerome Wallace located at 13355 Honey Way in Madison, Alabama.[18]  In an affidavit submitted in support of the application for a search warrant, Agent Harnen testified that a "source of information" communicated to him and other law enforcement officers that Jerome Wallace had conversations with the leader of a criminal organization regarding the distribution of marijuana and other drugs.[19]  The application for warrant stemmed from a large investigation by the joint federal and state (Morgan and Madison Counties in Alabama) High Intensity Drug Trafficking Area ("HIDTA") task force. Agent Harnen obtained a total of more than thirty federal search warrants related to the HIDTA investigation.[20]

---

[17] *Id.* ¶ 9.

[18] *Id.* ¶ 12.  Jerome Wallace is the nephew of plaintiff, Kenneth Wayne Jamar.

[19] *Id.* ¶ 13.

[20] *Id.* ¶ 12; doc. no. 117, Ex. B (Deposition of City of Huntsville Police Sargent Gerry Norris) at 101-02.

11

Agent Harnen enlisted the help of ABI Agent Morrison, Deputy Sheriff McDaniel, and the Huntsville SWAT team defendants for the purpose of providing assistance and security during the service and execution of several search warrants, including the warrant directed to the home of Jerome Wallace.[21]

In preparation for the execution of the warrants, Agent Harnen briefed more than 200 law enforcement officers on June 26, 2006.  The group included ABI Agent Russell Morrison, Madison County Deputy Sheriff Eddie McDaniel, and all of the Huntsville SWAT team defendants.[22]  When briefing these law enforcement officers, Agent Harnen incorrectly directed them to execute the search warrant at the house located at 13*889* Honey Way — plaintiff's home — rather than the home of Jerome Wallace located at 13*355* Honey Way in Madison, Alabama.[23]

Plaintiff alleges in his amended complaint that Agent Harnen attached a satellite photograph of several houses located on Honey Way that had been obtained from the "Google Earth" website to his application for the issuance of the search warrant, and that Harnen incorrectly circled the house occupied by plaintiff as the location for the execution of the search warrant:

---

[21] *See* doc. no. 61, ¶ 15.

[22] *Id.*

[23] *Id.* ¶ 13.

12

At some point before June 27, 2006, Agent Harnen and/or one of the other named law enforcement defendants obtained an aerial photograph from the Internet site "Google" which pictured several homes on Honey Way in Madison, Alabama, including the home of [plaintiff] and the home of Jerome Wallace.  In their careless efforts to describe to the United States magistrate judge the exact location where Jerome Wallace's home was located at 13355 Honey Way in Madison, Alabama, the DEA, acting through Agent Harnen, Agent Morrison or Agent McDaniel, or another of the United States of America's duly authorized employees or agents, wrongfully circled the home belonging to [plaintiff] as the location where the Huntsville SWAT team, Agent Morrison, and Agent McDaniel were to serve the warrant pertaining to Jerome Wallace even though these experienced and sophisticated federal law enforcement Defendants knew Jerome Wallace's correct street address, applied for a search warrant to Jerome Wallace's correct street address, and knew, or with due care, should have known, that Jerome Wallace's home was not the same home as the one circled on the aerial photograph.[24]

On the morning of June 27, 2006, Madison County Deputy Sheriff Eddie McDaniel and the Huntsville SWAT team defendants drove to plaintiff's home at 13*889* Honey Way, to assist ABI Agent Russell Morrison in the service and execution of the search warrant for the residence located at 13*355* Honey Way.[25]

Plaintiff described the events that subsequently occurred as follows:

The Huntsville SWAT team and Agents Morrison and McDaniel approached the front door of [plaintiff's] home located at 13889 Honey Way.  As they approached his home, the Huntsville SWAT team was equipped with assault weapons, helmets and a full complement of protective gear and equipment.  At the time the

---

[24] *Id*. ¶ 14 (alterations added).

[25] *Id*. ¶ 16.

13

Huntsville SWAT team descended upon his home, [plaintiff] was asleep in bed.  After entering the front door of the home without [plaintiff's] knowledge or consent, the Huntsville SWAT team kicked open the door to [plaintiff's] bedroom[,] suddenly waking him up.

As the Huntsville SWAT team proceeded into his bedroom, the Huntsville SWAT team used deadly force without cause to do so by firing their assault weapons toward [plaintiff] as he lay in his bed causing him to suffer several grievous and life-threatening gun shot wounds.[26]

Plaintiff further alleges that he did not "fire a weapon, make threatening statements or commit any threatening acts toward any of the Huntsville SWAT team or Agents Morrison and McDaniel"; and that, at "no point prior to or during the illegal and warrantless intrusion" of his home did he "commit a crime, pose an immediate threat to the safety [of] the Huntsville SWAT team or Agents Morrison or McDaniel, or resist arrest."[27]

Plaintiff asserts that, as a result of the defendants' conduct, he suffered severe personal injuries, including, but not limited to:  several gun shot wounds to his body; surgical intervention and repairs; loss and removal of his genitalia; permanent physical injuries; past medical bills and costs; and, pain and suffering, mental anguish, emotional distress, and loss of the enjoyment of life.  In addition, plaintiff alleges damage to his home and personal property, and contends that he

---

[26] *See* doc. no. 61, ¶¶ 17-18.

[27] *Id*. ¶¶ 19-20 (alterations added).

will continue to incur medical bills and costs for the future care and treatment of his injuries.[28]

## IV.  PLAINTIFF'S CLAIMS FOR RELIEF

**A.**    **Count One —** *claims asserted under the Federal Tort Claims Act*

Plaintiff alleges in Count One of his amended complaint that the United States is liable to him for the negligent, wrongful, and intentional conduct of its employees and agents under the Federal Tort Claims Act ("FTCA") — a group of statutes originally enacted in 1945 and distributed throughout the United States Code that limit federal sovereign immunity and, thereby, allow a plaintiff to recover monetary damages in federal court for personal injuries, death, and property damage caused by federal employees acting within the scope of their employment, but only if the law of the state in which the injuries occurred would hold a private person liable for the same injury.[29]  *See* 28 U.S.C. §§ 1346(b), 1402(b), 1504, 2110, 2401(b), 2402, 2411(b), 2412, and 2671-2680; *see also* 28 U.S.C. § 1346(b).  FTCA claims are triable by a district judge sitting alone, without the aid of a jury.  *See generally* David Schwartz & Sidney B. Jacoby, *Litigation With the Federal Government* 195 *et seq.* (1970).

---

[28] *Id.* ¶ 22.

[29] *See* doc. no. 61 (amended complaint), ¶¶ 23-38.

Plaintiff alleges that Agent Harnen, while acting within the line and scope of his employment with the United States as an agent of the Drug Enforcement Administration, failed to exercise due care when determining whether the house circled on the "Google Earth" satellite photograph attached to his application for search warrant actually was the structure that bore the street address inscribed on the application for a search warrant, and when directing ABI Agent Morrison, Madison County Deputy Sheriff McDaniel, and the Huntsville SWAT team defendants to the house occupied by plaintiff for execution of the warrant, rather than to the home of the true target of the investigation, Jerome Wallace.[30]

Plaintiff also alleges that ABI Agent Morrison, Deputy Sheriff McDaniel, and the Huntsville SWAT team defendants were acting as "employee[s] of the government," as that term is defined for purposes of FTCA liability under 28 U.S.C. § 2671.[31]   Plaintiff contends that, as such employees, ABI Agent Morrison and Deputy Sheriff McDaniel "acted without due care" when they "negligently and wrongfully caused the Huntsville SWAT team defendants to commit a warrantless search of plaintiff's home."[32]

---

[30] *Id.* ¶¶ 25-27.

[31] *Id.* ¶¶ 27, 31.  The second paragraph of 28 U.S.C. § 2671 provides that the term "employee of the government" includes, among other things, "officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation . . . ."

[32] *Id.* ¶¶ 27-28.

Finally, plaintiff alleges that DEA Agent Harnen, ABI Agent Morrison, Deputy Sheriff McDaniel, and the Huntsville SWAT team defendants are guilty of the state-law torts of trespass, invasion of privacy, assault, and battery.[33]

**B**.    **Count Two —** *claims asserted under 42 U.S.C. § 1983*

Count Two of the amended complaint alleges that DEA Agent Harnen, ABI Agent Morrison, Deputy Sheriff McDaniel, and the Huntsville SWAT team defendants violated the Fourth and Fourteenth Amendment prohibition against an "unreasonable" search and seizure.[34]    These constitutional claims are asserted pursuant to 42 U.S.C. § 1983, which provides a means of seeking redress against

---

[33] *Id*. ¶¶ 25-27, 29.  As two commentators have observed, the FTCA incorporates by reference the local state law of torts:  "the law to be applied being the state law applicable to the United States if it were a private person."  David Schwartz & Sidney B. Jacoby, *Litigation With the Federal Government* 195 (1970).

[34] *See* doc. no. 61 (amended complaint) ¶¶ 39-53.  The Fourth Amendment to the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., amend. IV (1791).  The Fourth Amendment was "incorporated" into the Due Process Clause of the Fourteenth Amendment — and thereby made applicable to the various states — by the Supreme Court's decision in *Mapp v. Ohio*, 367 U.S. 643 (1961).  *See also Ker v. California*, 374 U.S. 23 (1963); and *Wolf v. Colorado*, 338 U.S. 25 (1949).  Note well, however, that, despite the use of language prohibiting "unreasonable" searches of *places* ("houses") and seizure of *things* ("papers, and effects"), modern jurisprudence clearly establishes that the Fourth Amendment "protects individuals." *United States v. Chanthasouxat*, 342 F.2d 1271, 1275 (11th Cir. 2003) (quoting *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir.2001)).

17

governmental entities and officials whose conduct under color of *state law* deprives a plaintiff of rights, privileges, or immunities secured by the United States Constitution or federal statutes.[35]

There are two essential elements of a claim asserted pursuant to § 1983:  the conduct complained of must have been committed by a person acting under color of *state law*; and the conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *See*, *e.g.*, *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *partially overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *see also*, *e.g., Burch v. Appalachee Community Mental Health Servs., Inc.*, 840 F.2d 797, 800 (11th Cir. 1988) (*en banc*), *aff'd sub nom. Zinermon v. Burch*, 494 U.S. 113 (1990).

Plaintiff also alleges in Count Two that DEA Agent Harnen conspired with ABI Agent Russell Morrison, Madison County Deputy Sheriff Eddie McDaniel,

---

[35] The statute was enacted for the express purpose of enforcing the Fourteenth Amendment. *See*, *e.g.*, *Mitchum v. Foster*, 407 U.S. 225, 238-39 (1972).  (Other cases providing insight into the history of § 1983 include *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 834 (1985); *Monroe v. Pape*, 365 U.S. 167, 171 (1961).)  Two fundamental principles that bear reiteration are these:  § 1983 is not jurisdictional; and it is not "itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citations and internal quotation marks omitted).  Two jurisdictional statutes apply to § 1983 litigation in federal court:  28 U.S.C. § 1343(a)(3), the jurisdictional counterpart of 42 U.S.C. § 1983; and, 28 U.S.C. § 1331, the general federal question statute.  Of the two statutes, § 1331 provides for more expansive jurisdiction, because it affords jurisdiction in cases raising a federal question.  In contrast, § 1343(a)(3) limits federal jurisdiction to suits involving "equal rights."  Neither statute sets an amount that must be in controversy for jurisdiction to attach.

18

and the Huntsville SWAT team defendants to commit an illegal search and seizure

of his home.[36]   Even though 42 U.S.C. § 1985 provides more explicit statutory

foundations for conspiracy claims,[37] it is, nevertheless, clear that "[a]n action for

conspiracy *may be* maintained under section 1983."   *Slavin v. Curry*, 574 F.2d

1256, 1261 (5th Cir.) (emphasis supplied), *modified on other grounds*, 583 F.2d

---

[36] *See* doc. no. 61 (amended complaint), ¶ 53.  Note that this paragraph contains a reference to an individual named "Agent Franklin," but no other information identifying that person is provided.

[37] The portion of 42 U.S.C. § 1985 that arguably might apply to the facts of this action reads as follows:

> (3) Depriving persons of rights or privileges— If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3) (2009).

779 (1978), *overruled on other grounds*, *Sparks v. Duval County Ranch Company, Inc.*, 604 F.2d 976, 978 & n.2 (5th Cir. 1979) (*en banc*).[38]

**C**.    **Count Three —** *claims asserted under the* Bivens *opinion*

Plaintiff also alleges violations of his Fourth Amendment right to be free from an unreasonable search and seizure against DEA Agent Harnen under the theory of liability elucidated by the Supreme Court in the case styled *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In that opinion, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66 (2001).[39]   Plaintiff alleges that Agent Harnen illegally directed other officers to conduct a warrantless search of his house without probable cause and/or a reasonable basis to believe either that the person who was the true target of the

---

[38] There are five essential elements of a cognizable § 1983 civil conspiracy claim. A plaintiff must allege (and ultimately prove) that:  (1) two or more persons (2) reached an agreement to accomplish a common and unlawful plan; and that (3) at least one of the conspirators, while acting under color of *state law*, (4) committed an overt act in furtherance of that illegal objective (5) that deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See*, *e.g., McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (*en banc*).

[39] *See also*, *e.g.*, *Black's Law Dictionary* 191 (defining a *Bivens* action as a "lawsuit brought to redress a federal official's violation of a constitutional right.  A *Bivens* action allows federal officials to be sued in a manner similar to that set forth at 42 USCA § 1983 for state officials who violate a person's constitutional rights under color of state law.") (9th ed. 2009) (Bryan A. Garner ed.) (citation omitted).

warrant (*i.e.*, Jerome Wallace), or that the items described in the search warrant for seizure, were within plaintiff's home.[40]

**D**.    **Counts Four through Ten —** *supplemental state law claims*

In Counts Four and Five, plaintiff alleges state-law claims of negligence and wantonness against DEA Agent Harnen, the City of Huntsville, and the Huntsville SWAT team defendants in their official and individual capacities.[41]  Plaintiff seeks compensatory damages from these defendants jointly and severally, as well as punitive damages, and the costs of this action.  This court previously substituted the United States for Agent Harnen with respect to plaintiff's claims for negligence and wantonness pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679 and, therefore, dismissed such claims against Agent Harnen individually.[42]

Counts Six and Eight through Ten[43] allege state-law claims of trespass, invasion of privacy, outrageous conduct, and assault and battery against the City of Huntsville and the Huntsville SWAT team defendants in their official and

---

[40] *See* doc. no. 61 (amended complaint), ¶ 55.

[41] *Id*. ¶¶ 62-77.

[42] *See* doc. no. 111.

[43] *Nota bene*:  There is not a Count Seven in plaintiff's amended complaint, and this opinion accordingly refers to the counts in the amended complaint as they are numbered.

21

individual capacities.[44]   For each claim, plaintiff seeks compensatory and punitive damages for his injuries and property damage, as well as the costs of this action.

## V.  DISCUSSION

### A.   The City of Huntsville's Motion to Strike Plaintiff's Claims for Punitive Damages

The City of Huntsville moves this court to strike any claims in which plaintiff seeks punitive damages against the City, and bases its motion upon the state statute providing that "[p]unitive damages may not be awarded against the State of Alabama *or any county or municipality thereof*, or any agency thereof, except any entity covered under the Medical Liability Act now codified as Section 6-5-480 *et seq*., or any acts amendatory thereto."   Ala. Code § 6-11-26 (1975) (2005 Replacement Vol.) (emphasis supplied).[45]   This motion was not opposed by plaintiff.  Accordingly, this court holds that punitive damages may not be recovered from the City of Huntsville, and all such claims are due to be stricken.

### B.   The City of Huntsville's Motion to Dismiss

The City of Huntsville also asks this court to dismiss plaintiff's state-law claims against it that seek damages for acts of wantonness, trespass, invasion of

---

[44] *Id*., ¶¶ 62-92.  In Count XI plaintiff alleges that "the defendant City of Huntsville is vicariously liable to the plaintiff for the Huntsville SWAT team defendants['] wrongful conduct committed in the line and scope of their employment in both their official and individual capacities." *Id*., ¶ 95.

[45] *See* doc. no. 65.

privacy, outrageous conduct, and assault and battery.[46]  Plaintiff concedes that his

wantonness claim against the City is due to be dismissed pursuant to *Hilliard v.*

*City of Huntsville*, 585 So. 2d 889, 892 (Ala. 1991) (interpreting Alabama statutory

law limiting the liability of municipalities "to injuries suffered through 'neglect,

carelessness or unskillfulness.'") (quoting Ala. Code § 11-47-190 and citing

*Neighbors v. City of Birmingham*, 384 So. 2d 113 (Ala. 1980)).[47]  Accordingly,

judgment will be entered in favor of the City on plaintiff's state-law claim of

wantonness without further discussion.

The City also argues that plaintiff's supplemental state-law claims against it

for any acts of trespass, invasion of privacy, outrage, or assault and battery

allegedly committed by the Huntsville SWAT team defendants should be conflated

into a single claim of negligence under Alabama Code § 11-47-190, which

provides that:

> No city or town shall be liable for damages for injury done to or
> wrong suffered by any person or corporation, unless such injury or
> wrong was done or suffered through the neglect, carelessness, or
> unskillfulness of some agent, officer, or employee of the municipality
> engaged in work therefor and while acting in the line of his or her

---

[46] *See* doc. no. 62.  The City of Huntsville also moves to dismiss "the claims for money damages alleged against it under the Alabama Constitution of 1901." *Id*, at 3.  This court does not read the amended complaint to state such causes of action and notes that plaintiff has stated that he did not assert such claims. *See* doc. no. 78, ¶ 3.

[47] *See* doc. no. 78, ¶ 1 ("As [the City of Huntsville's motion to dismiss] relates to the wantonness claims against the City (and only the City), Mr. Jamar concedes.").

*duty*, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways, or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body and whenever the city or town shall be made liable for damages by reason of the unauthorized or wrongful acts or negligence, carelessness, or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured.

Ala. Code § 11-47-190 (1975) (2008 Replacement Vol.) (emphasis supplied).

Clearly, therefore, the liability of Alabama municipalities is limited to two distinct classes of injury-producing acts.   On the one hand, a municipality may be held liable "under the doctrine of *respondeat superior* for injuries that result from the wrongful conduct of its agents or officers in the line of duty."   *City of Lanett v. Tomlinson*, 659 So. 2d 68, 70 (Ala. 1995).   *See also*, *e.g.*, *Roberts v. City of Geneva*, 114 F. Supp. 2d 1199, 1213 (M.D. Ala. 2000) (finding that, under § 11-47-190, "a city's liability is limited to negligence-based claims only"); *City of Prattville v. Post*, 831 So. 2d 622, 627 (Ala. Civ. App. 2002) ("Section 11-47-190, Ala. Code 1975, limits monetary damages against a municipality to those claims alleging negligence.").

On the other hand, a municipality also may be held liable for injuries

suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways, or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body.

Ala. Code § 11-47-190.

Based upon the proposition that § 11-47-190 restricts the vicarious liability of Alabama municipalities to claims sounding in negligence, the City argues that plaintiff's claims against it for acts of city agents — the Huntsville SWAT team defendants — that allegedly constituted trespass, invasion of privacy, outrageous conduct, and assault and battery are due to be dismissed because such claims arise from allegedly intentional or willful acts.  The City cites as support for this argument the Alabama Court of Civil Appeal's opinion in *Thurmond v. City of Huntsville*, 904 So. 2d 314 (Ala. Civ. App. 2004), holding that:  "Although the plaintiffs denominated their negligence-based claims as 'negligent assault and battery' claims, those claims are subsumed within a single claim of negligence under § 11-47-190, Ala. Code 1975."  *Id*. at 316 n.2.

Plaintiff argues that the City has incorrectly construed § 11-47-190 and its case law gloss when contending that the statute precludes intentional tort claims. He cites *City of Birmingham v. Thompson*, 404 So. 2d 589 (Ala. 1981), which held

25

that a municipality could be held vicariously liable under § 11-47-190 for a claim of "negligent assault and battery" against city police officers, and *Franklin v. City of Huntsville*, 670 So. 2d 848 (Ala. 1995), in which the Alabama Supreme Court relied upon its earlier decision in *Thompson* as the basis for reversing a trial court's order granting summary judgment in favor of the City, and remanding the case for trial on three intentional tort claims — false imprisonment, malicious prosecution, and assault and battery.  *Id*. at 852.

Although plaintiff correctly asserts that, in *Thompson*, the Alabama Supreme Court held that a claim for a "negligent assault and battery" (whatever that oxymoron means) "fell within the conduct for which the legislature has prescribed a remedy under § 11-47-190," 404 So. 2d at 592, that Court has repeatedly emphasized the more general proposition that the subject statute insulates municipalities from liability for intentional torts committed by their employees and agents.  *See, e.g., Cremeens v. City of Montgomery*, 779 So. 2d 1190, 1201 (Ala. 2000) (holding that "a municipality cannot be held liable for the intentional torts of its employees") (citing Ala. Code § 11-47-190); *Ex parte City of Gadsden,* 718 So. 2d 716, 721 (Ala. 1998) (holding that § 11-47-190 "absolves a city from liability for an intentional tort committed by one of its agents"); *Altmayer v. City of Daphne*, 613 So. 2d 366, 369 (Ala. 1993) (same); *Scott v. City of Mountain Brook*,

602 So. 2d 893, 894-95 (Ala. 1992) ("[W]e cannot conclude that the terms 'neglect,' 'carelessness,' and 'unskillfulness,' given their plain meanings, encompass intentional interference with a business relationship or a civil conspiracy predicated on a purposeful scheme to damage the plaintiffs."). *See also Todd v. Kelley*, 783 So. 2d 31, 42 (Ala. Civ. App. 2000) (holding that § 11-47-190 "provides for an action against a municipality for the 'neglect, carelessness, or unskillfulness' of its agents, not for their intentional torts") (citing *Couch v. City of Sheffield*, 708 So. 2d 144, 154 (Ala. 1998)).

The dispositive question, therefore, becomes whether plaintiff's claims of trespass, invasion of privacy, outrageous conduct, and assault and battery are premised on allegations of *intentional* misconduct by the Huntsville SWAT team defendants.  In *Borders v. City of Huntsville*, 875 So. 2d 1168 (Ala. 2003), the Alabama Supreme Court held that § 11-47-190 did not insulate the muncipality from liability for plaintiff's claims of excessive use of force, false arrest, false imprisonment, and assault and battery, because all of those claims were based upon the employee's alleged neglect, carelessness, and unskillfulness.  *See Borders*, 875 So. 2d at 1183.  That Court based its holding on *Franklin*, in which the Court had previously held that "where a plaintiff alleges a factual pattern that demonstrates

'neglect, carelessness, or unskillfulness' the plaintiff has stated a cause of action under Ala. Code 1975, § 11-47-190." *Franklin*, 670 So. 2d at 852.

Here, however, the face of plaintiff's amended complaint clearly shows that his trespass claims are based upon the intentional conduct of the Huntsville SWAT team defendants.  In Count XI for example, plaintiff alleges that the Huntsville SWAT team defendants "wrongfully committed an *intentional* trespass upon [plaintiff's] home," and that "the trespass committed by the Huntsville SWAT team defendants . . . were [*sic*] committed *intentionally* and with force and without plaintiff's consent."[48]  Consequently, plaintiff has not stated a cause of action that is cognizable under § 11-47-90, and his trespass claims against the City of Huntsville are due to be dismissed.

Plaintiff's claims of invasion of privacy and outrageous misconduct against the City of Huntsville are also due to be dismissed because mere acts of "neglect, carelessness or unskillfulness" on the part of a defendant do not support such claims.  "'[The Alabama Supreme] Court defines the tort of invasion of privacy as the *intentional* wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.'"  *Rosen v. Montgomery Surgical Center*, 825 So. 2d 735, 737 (Ala.

---

[48] Doc. no. 61, ¶¶ 79-80 (emphasis supplied).

2001) (quoting *Carter v. Innisfree Hotel, Inc*., 661 So. 2d 1174, 1178 (Ala. 1995))

(emphasis supplied).  Additionally, under Alabama law, the tort of outrage is the

same cause of action as an *intentional* infliction of emotion distress, and it requires

proof that "the actor *intended* to inflict emotional distress, or knew or should have

known that emotional distress was likely to result from his conduct."  *Harris v.

McDavid*, 553 So. 2d 567, 569-70 (Ala. 1989) (emphasis supplied).  *See also Ex

Parte Lumbermen's Underwriting Alliance*, 662 So. 2d 1133, 1134 (Ala. 1995)

(recognizing that intentional infliction of emotional distress is "otherwise known as

the tort of outrage"); *Sphere Drake Ins., P.L.C. v. Shoney's, Inc.,* 923 F. Supp.

1481, 1491 (M.D. Ala. 1996) (stating that, under Alabama law, the tort of outrage

and the intentional infliction of emotional distress are "the same cause of action").

Neither the tort of invasion of privacy nor that of outrage is based upon conduct

that may be characterized as "neglect, carelessness or unskillfulness" and,

therefore, pursuant to § 11-47-190, the City of Huntsville cannot be held liable for

those claims.

On the other hand, the Alabama Supreme Court has repeatedly held that a

claim of assault and battery may be based upon the neglect, carelessness, or

unskillfulness of municipal employees.  *See Thompson*, 404 So. 2d at 592;

*Franklin*, 670 So. 2d at 852; *Borders*, 875 So. 2d at 1183.  Further, plaintiff's

29

complaint does not allege that the Huntsville SWAT team defendants *intentionally* committed an assault and battery upon him.  Instead, plaintiff asserts that the Huntsville SWAT team defendants "acted negligently when they . . . used unjustifiable deadly force upon [plaintiff] during the illegal raid at his home . . . ."[49] Plaintiff then alleges that the Huntsville SWAT team defendants "committed an assault and battery upon the person of [plaintiff] by unlawfully shooting him during an illegal and hostile raid of his home," and that this "wrongful conduct" was the proximate cause of his injuries.[50]  Because plaintiff has alleged a claim of assault and battery based upon negligence against the City of Huntsville, such a claim is not precluded by § 11-47-190 at this stage of the proceedings.

In sum, plaintiff's state-law claims against the City of Huntsville for wantonness, trespass, invasion of privacy, and outrage are due to be dismissed, but his claims for negligence and assault and battery will remain pending against the City.

**C.    The Huntsville SWAT Team Defendants' Motion to Dismiss**

The Huntsville SWAT team defendants have moved to dismiss the following claims:    (1)  all  official-capacity  claims;  (2)  all  §  1983  claims  based  upon

---

[49] Doc. no. 61, ¶ 66.

[50] *Id.*, ¶¶ 91, 92.

independent violations of the Fourteenth Amendment to the United States Constitution; (3) the state-law claim for "outrageous conduct"; and (4) all claims under the *Alabama* Constitution.[51]   In response, plaintiff asserts that each of the challenged claims is based upon statutory and common law, not the Alabama Constitution, and he agrees with the Huntsville SWAT team defendants that Alabama law does not recognize an independent cause of action based solely upon a violation of an individual's rights under the State Constitution.[52]   Therefore, to the extent that any of plaintiff's claims appear to be based upon the Alabama Constitution, those claims are due to be dismissed.

### 1.   Official-capacity claims

The Huntsville SWAT team defendants argue that plaintiff's claims against them in their official capacities are due to be dismissed, because such claims are the functional equivalent of plaintiff's claims against the City of Huntsville.  The Huntsville SWAT team defendants rely upon the Alabama Supreme Court's opinion in *Dickinson v. City of Huntsville*, 822 So. 2d 411 (Ala. 2001), which held that an official capacity claim against a municipal employee or agent is equivalent to suing the municipality itself.  *See Dickinson*, 822 So. 2d at 415.  In *Dickinson*, an

---

[51] *See* doc. no. 68.

[52] *See* doc. no. 90 at 10.

employee of the City of Huntsville sued Loretta Spencer in her official capacity as Mayor of the City of Huntsville, alleging that Ms. Spencer had improperly hired private investigators to investigate the plaintiff's outside business activities. *Id*. at 413-14. The trial court granted Mayor Spencer's motion to substitute the City of Huntsville in her place, and ultimately granted the City's motion for summary judgment. *Id*. at 414. On appeal, the plaintiff relied on the Alabama Supreme Court's opinion in *Smitherman v. Marshall County Commission*, 746 So. 2d 1001 (Ala. 1999), to argue that the trial court improperly substituted the City for Mayor Spencer. *Id*. at 415. In *Smitherman*, the Alabama Supreme Court held that the plaintiff in a negligence action could sue a county, in addition to individual county commissioners in their official capacities, and a county engineer in his official capacity, and observed that "there is in fact a legal distinction between a county and its commission," and "a legal distinction between a county and its employees, acting in their official capacities." *Smitherman*, 746 So. 2d at 1005.

In *Dickinson*, however, the Alabama Supreme Court concluded that "*Smitherman* is distinguishable from the present case because of the nature of the parties involved." *Dickinson*, 822 So. 2d at 415. The Court explained that a county commissioner, like a member of a city council, is part of a "governing body," whereas a mayor is merely "the agent of the City, through whom the City

32

acts." *Id*.  Based on this reasoning, the Court concluded that "to sue the mayor in her official capacity is simply another way of suing the City," and held that the trial court properly substituted the City for Mayor Spencer.  *Id*.

Similarly, in the instant case, this court finds that the Huntsville SWAT team defendants are "agents of the City, through whom the City acts." *Dickinson*, 822 So. 2d at 415.  To sue the Huntsville SWAT team defendants in their official capacities is merely another way of suing the City that employed them.  Because plaintiff has alleged the same state-law claims against both the City of Huntsville and the Huntsville SWAT team defendants, the claims against the Huntsville SWAT team defendants in their official capacities are redundant and due to be dismissed.

### 2.    § 1983 claims

The Huntsville SWAT team defendants next argue that plaintiff's § 1983 claims for unlawful search and seizure, "to the extent those claims are predicated upon the Due Process Clause of the Fourteenth Amendment to the United States Constitution," fail to state a claim upon which relief may be granted "because such claims are actionable, if at all, solely under the Fourth Amendment to the United

States Constitution."[53]   The Huntsville SWAT team defendants base this assertion

on allegations in plaintiff's complaint that they,

> jointly and severally, committed an unlawful search and seizure infringing upon [plaintiff's] personal liberty, property rights and right to due process of law *in violation of the 4th and 14th amendments of the United States Constitution* creating a cause of action under 42 U.S.C. § 1983 by committing the warrantless search of Plaintiff's home without probable cause and exigent circumstances.
>
>           . . . .
>
> [The Huntsville SWAT teams defendants used ] excessive force upon plaintiff during . . . [an] illegal and warrantless search of his home, depriv[ing] Plaintiff of his substantive due process rights under the 14th Amendment.[54]

It is a fundamental proposition of constitutional law that the first eight

amendments to the United States Constitution, which are generally referred to as

the Bill of Rights, were intended to act as restraints upon the exercise of power by

---

[53] Doc. no. 68, ¶ 2.  Relying upon *Graham v. Connor*, 490 U.S. 386, 394 (1989), the Huntsville SWAT team defendants argue that plaintiff's claims alleging unlawful search and seizure are actionable only under the Fourth Amendment, not the Due Process Clause of the Fourteenth Amendment.  "In *Graham*, the Supreme Court held that where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process" must be the guide for analyzing' the claim."  *Tinney v. Shores*, 77 F.3d 378, 381 (11th Cir. 1996) (quoting *Graham*, 490 U.S. at 395).  *Graham* involved allegations that law enforcement officers used excessive force during the course of an investigatory stop.  *Graham*, 490 U.S. 388.  The Supreme Court held that "*all* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a [Fourteenth Amendment] 'substantive due process' approach."  *Id.* at 395 (emphasis in original).

[54] Doc. no. 61, ¶¶ 40, 44 (emphasis supplied).

the new, national government, and not the various states.[55]  *Barron v. Baltimore*, 32 U.S. (7 Pet.) 243 (1833) (Marshall, C.J., unanimous opinion) (holding that the first eight amendments "demanded security against the apprehended encroachments of the general government — not against those of the local governments").  Unlike the Bill of Rights, however, the Fourteenth Amendment, adopted in the wake of the Civil War, was restrictive of the exercise of power by state governments.  Beginning in 1925,[56] the Supreme Court held in a variety of cases that some of the individual rights protected by the Bill of Rights are also protected against interference by the states by the Fourteenth Amendment's Due Process Clause.[57]  The Fourth Amendment's prohibition against "unreasonable" searches and seizures[58] was "incorporated" into the Due Process Clause of the Fourteenth

---

[55] The first ten amendments to the United States Constitution were ratified in 1791; amendments one through eight are generally referred to as the Bill of Rights.  The Ninth Amendment provides that the "enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people."  The Tenth Amendment provides that the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

[56] *See Gitlow v. New York*, 268 U.S. 652 (1925) (stating in *dicta* that, for "present purposes we may and do assume that freedom of speech and of the press — which are protected by the First Amendment from abridgement by Congress — are among the fundamental personal rights and 'liberties' protected by the due process clause of the Fourteenth Amendment from impairment by the States").

[57] The Fourteenth Amendment's Due Process Clause provides that "No State shall . . . deprive any person of life, liberty, or property, without due process of law; . . ." U.S. Const., amend. XIV, § 1 (1868).

[58] The Fourth Amendment to the United States Constitution provides that:  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by

Amendment — and thereby made applicable to the various states — by the Supreme Court's decision in *Mapp v. Ohio*, 367 U.S. 643 (1961).[59]

Three conclusions are clear to this court.  First, plaintiff's reference to both the Fourth and Fourteenth Amendments in paragraph 40 of his complaint probably was a shorthand manner of referencing that history.  Second, plaintiff asserts two Fourth Amendment claims against the Huntsville SWAT team defendants:  (*i*) an unreasonable, warrantless search of his home; and (*ii*) an unreasonable seizure of his person through the use of excessive force.  Third, and in any event, neither of the foregoing claims are founded upon the so-called "substantive component" of the Fourteenth Amendment's Due Process Clause, and defendants' contrary argument is frivolous.

### 3.     The Tort of Outrage

The Alabama Supreme Court first recognized the "tort of outrage" in *American Road Service Co. v. Inmon,* 394 So. 2d 361 (1980), saying:

---

Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const., amend. IV (1791).

Note well that, despite the language prohibiting "unreasonable" searches of *places* ("houses") and seizure of *things* ("papers, and effects"), modern jurisprudence clearly establishes that the Fourth Amendment "protects individuals."  *United States v. Chanthasouxat*, 342 F.2d 1271, 1275 (11th Cir. 2003) (quoting *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir.2001)).

[59] *See also*, *e.g.*, *Ker v. California*, 374 U.S. 23 (1963); and *Wolf v. Colorado*, 338 U.S. 25 (1949).

> We . . . join with our sister states . . . in appreciating that willful wrongs, or those made so recklessly as to equate willfulness, authorize recovery in damages for the mental suffering caused thereby, and we now recognize that one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress.  The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it.  Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme.  By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

*Inmon*, 394 So. 2d at 365 (internal citations omitted).

To establish such a claim, regardless of whether it is characterized by a plaintiff as "outrage" or as the intentional infliction of emotional distress, the plaintiff must demonstrate:

> (1) that the defendants either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from their conduct; (2) that the defendants' conduct was extreme and outrageous; and (3) that the defendants' conduct caused emotional distress so severe that no reasonable person could be expected to endure it.

*Callens v. Jefferson County Nursing Home*, 769 So. 2d 273, 281 (Ala. 2000) (citing *Jackson v. Alabama Power Co.*, 630 So. 2d 439 (Ala. 1993), and *Inmon, supra*). The Alabama Supreme Court recognizes the tort only in "egregious circumstances," and has limited its application to three areas:  wrongful conduct

within the context of family burials; an insurance agent's act of coercing an insured into settling an insurance claim; and egregious acts of sexual harassment. *Callens,* 769 So. 2d at 281 (citing *Thomas v. BSE Indus. Contractors, Inc.,* 624 So. 2d 1041 (Ala. 1993)).  Because the actions of the Huntsville SWAT team defendants do not fall into any of these categories, plaintiff's claim of outrageous conduct against the Huntsville SWAT team defendants is due to be dismissed.

**D**.    **Agent Harnen's Motion to Dismiss**

DEA Agent Harnen has moved to dismiss any claims asserted against him that are founded upon 42 U.S.C. § 1983, the *Bivens* decision, and state-law tort theories of negligence or wanton misconduct.[60]  In response, plaintiff concedes that his § 1983 claims against Agent Harnen are due to be dismissed, because Agent Harnen was a *federal* officer acting under color of *federal* law.  *See*, *e.g.*, *American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that [he or she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of *state* law.") (emphasis supplied).  Judgment will be entered in favor of

---

[60] *See* doc. no. 68.

38

Agent Harnen as to any § 1983 claims asserted against him, including plaintiff's claims of conspiracy, without further discussion.

Furthermore, this court previously substituted the United States as the proper party-defendant with regard to plaintiff's claims for negligence and wanton misconduct by DEA Agent Francis J. "Rocky" Harnen, Jr.[61]

Thus, Agent Harnen's only remaining argument is that plaintiff's constitutional claims against him under the *Bivens* doctrine are due to be dismissed because he is entitled to the protection of qualified immunity.

When a federal law enforcement officer is sued personally, or in an "individual capacity," for money damages under *Bivens*, the official may invoke the doctrine of "qualified immunity" as a defense to the claim. *See, e.g., Wilson v. Layne*, 526 U.S. 603, 609 (1999) (holding that the qualified immunity analysis is identical under both § 1983 and *Bivens*); *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Malley v. Briggs*, 475 U.S. 335, 340 n.2 (1986). Qualified immunity protects governmental officials who are sued for constitutional violations for civil damages in their individual capacities, but only so long as "their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *See*

---

[61] See doc. no. 111 (order entered May 15, 2009, pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679).

*also*, *e.g.*, *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001) (same), *vacated on other grounds*, 536 U.S. 953 (2002), *reinstated on remand*, 323 F.3d 950 (2003).

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotations and citations omitted). *See also Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). The doctrine of qualified immunity

> recognizes "the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." . . . Qualified immunity is meant to allow government officials to act with "independence and without fear of consequences" when the law is not clearly established.

*Marsh v. Butler County*, 268 F.3d 1014, 1030 n.8 (11th Cir. 2001) (quoting *Butz v. Economou*, 438 U.S. 478 (1978)); *see also Hudgins v. City of Ashburn*, 890 F.2d 396, 402 (11th Cir. 1990) ("The Supreme Court has recognized that public officials require the protection of qualified immunity from damage suits in order to execute their duties without interference and free from threats of liability, provided that their conduct is not unlawful.") (citation and footnote omitted).

"Once the defendant shows that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not

appropriate." *Lee*, 284 F.3d at 1194. Here, it is clear that Agent Harnen was acting within his discretionary authority at the time of the events leading to plaintiff's claims, and plaintiff has not disputed this point. Thus, plaintiff must show that Agent Harnen is not entitled to qualified immunity.

A law enforcement officer is entitled to qualified immunity under two, broad factual circumstances: (1) the claimant fails to establish that the officer's conduct violated his constitutional rights; or (2) the claimant alleges a violation of rights that were not "clearly established." *See Pearson v. Callahan,* ___ U.S. ___, 129 S. Ct. 808, 818 (2009).

### 1.    Do the facts alleged by plaintiff support a constitutional violation?

The Fourth Amendment provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., amend. IV (1791). "The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents." *Delaware v. Prouse*, 440 U.S. 648, 654 (1979). "It serves as a bulwark, protecting

individual liberty from arbitrary invasions by state actors." *Denson v. United States*, No. 05-15572, 2009 WL 2031036, at *10 (11th Cir. July 15, 2009).

As to searches of houses, the Fourth Amendment "has drawn a firm line at the entrance"; and, "[a]bsent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 590 (1980). Stated another way, it is "axiomatic that a warrantless search and seizure inside a residence is presumptively unreasonable." *United States v. Reed*, No. 08-10843, 2009 WL 567237, at *2 (11th Cir. March 6, 2009) (citing *United States v. McGough*, 412 F.3d 1232, 1237 (11th Cir. 2005)).

In situations where law enforcement officers mistakenly execute search warrants at the wrong houses, the Supreme Court has held that the search does not violate the Fourth Amendment if it can be shown that the officers' actions are "consistent with a reasonable effort to ascertain and identify the place intended to be searched." *Maryland v. Garrison*, 480 U.S. 79, 87-89 (1987). In *Garrison*, law enforcement officers obtained a warrant for "the premises known as 2036 Park Avenue third floor apartment," and, in doing so, believed that there was only one apartment on the third floor of the building. *Id*. at 80. In fact, there were two apartments on that floor, and the officers conducted a search of the wrong apartment. *Id*. The Supreme Court recognized "the need to allow some latitude for

42

honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants," and held that the officers exercised reasonable efforts to identify the premise to be searched within the meaning of the Fourth Amendment. *Id*. 87-89. The Court observed that the officers: went to the apartment building and found that it matched information given by an informant; checked with the gas and electric company to ascertain the name of the person to whom the third floor apartment was leased; and found that police records regarding the apartment matched information given by an informant. *Id*. at 85, n.10.

The Former Fifth Circuit and the Eleventh Circuit have both applied the standards set out in *Garrison* to find warrantless searches of residences to be unreasonable. In *Duncan v. Barnes*, 592 F.2d 1336 (5th Cir. 1979), for example law enforcement officers procured a warrant to search an individual's apartment for heroin. *Duncan*, 592 F.2d 1337.[62] The warrant incorrectly stated that the subject's apartment was "located upstairs in the rear" of an apartment building when, in fact, the individual resided in a downstairs apartment. *Id*. Law enforcement officers broke down doors to the wrong apartment and entered it with their guns drawn. *Id*. The officers damaged the personal property of the occupants and remained in the

---

[62] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

wrong apartment for ten minutes after their entry. *Id*. The former Fifth Circuit held that officers who have "a good faith and reasonable belief in the validity of the search warrant may nonetheless incur liability under 42 U.S.C. § 1983 . . . if the warrant is executed in an unreasonable manner," and concluded that, under the facts of that case, a "reasonable jury could have held that [the officers'] execution of the search warrant was malicious, arbitrary or capricious." *Duncan*, 592 F.2d at 1338. Accordingly, the court held that the officers could be found liable for violating the Fourth Amendment under § 1983. *Id*.

The facts undergirding the Eleventh Circuit's opinion in *Hartsfield v. Lemacks*, 50 F.3d 950 (11th Cir. 1995), are more like those of this case. There, law enforcement officers executed a search warrant at the wrong house. An officer procured a search warrant for the house located at **510*8*** Middlebrooks Drive after observing a drug buy at that address. *Id*. at 951. The next day the officer led other officers to execute the warrant at **512*8*** Middlebrooks Drive, even though the officer had the warrant in his possession and he had been to the house named in the warrant the previous day. *Id*. The Eleventh Circuit concluded that the resulting entry into the house at 5128 Middlebrooks Drive could have been avoided if the officer had simply checked the address on the warrant. *Id*. The Court held that the officer was not entitled to qualified immunity for constitutional claims brought

44

under § 1983 because "[he] had done nothing to make sure that he was leading the other officers to the correct residence." *Id*. at 955.  Following the reasoning of *Garrison*, the *Hartsfield* Court concluded that "searching the wrong residence when [the officer] had done nothing to make sure he was searching the house described in the warrant" was not consistent with a "reasonable effort" by the officer to avoid error and, therefore, constituted a violation of the Fourth Amendment.  *Hartsfield,* 50 F.3d at 955.

In this case, this court finds that plaintiff sufficiently alleges that Agent Harnen violated his Fourth Amendment rights.  Assuming (as the court must) that all of plaintiff's allegations are true, Agent Harnen failed to take any actions that were "consistent with a reasonable effort to ascertain and identify the place intended to be searched."  *Garrison*, 480 U.S. at 88-89.  At most, Agent Harnen unreasonably relied upon the accuracy of a "Google Earth" satellite photograph of Honey Way to identify the house named in the warrant.  As another court in this Circuit has recognized, "[r]esults from a Google search . . . are not capable of accurate and ready determination." *Grabein v. Jupiterimages Corp*., No. 07-22288, 2008 WL 2704451, at *9 (S.D. Fla. July 7, 2008).[63]

---

[63] Agent Harnen also contends that he did not violate plaintiff's Fourth Amendment rights because *other* officers entered plaintiff's house.  This argument, however, is unpersuasive because his direction of the officers to search plaintiff's house clearly contributed to the alleged violations of plaintiff's Fourth Amendment rights.

### 2. Were the rights allegedly violated "clearly established"?

Because plaintiff's complaint states a viable claim against Agent Harnen for an unreasonable search and seizure under the Fourth Amendment, the court must next determine whether the Fourth Amendment rights allegedly violated were clearly established at the time of the search. In determining whether the unlawfulness of a law enforcement officer's actions was clearly established, "'the salient question is whether the state of the law [at the time of the unconstitutional act] gave respondents fair warning that their alleged treatment of [the plaintiff] was unconstitutional.'" *Williams v. Consolidated City of Jacksonville,* 341 F.3d 1261, 1270 (11th Cir. 2003) (bracketed alterations in original) (quoting *Hope v. Pelzer,* 536 U.S. 730, 741 (2002)). The Supreme Court has rejected this Circuit's requirement that the facts of previous cases must always be "materially similar" to those facing the plaintiff. *Hope*, 536 U.S. at 739. Instead,

> [f]or a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, *see Mitchell* [*v. Forsyth,* 472 U.S. 511,] 535, n. 12, 105 S. Ct. 2806, 86 L. Ed. 2d 411; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

*Hope,* 536 U.S. at 741 (bracketed alterations in original).

This court finds that plaintiff's claims against Agent Harnen allege violations of clearly established law.  In *Hartsfield*, the Eleventh Circuit held that:

> Given the *per se* rule against warrantless searches and the guidance of the *Garrison* court's description of reasonable police efforts, all reasonable police officers should have known that . . . searching the wrong residence when he had done nothing to make sure he was searching the house described in the warrant — violated the law.

*Hartsfield*, 50 F.3d at 955 (citing *Duncan*, 592 F.2d at 1337-38, and *Wanger v. Bonner*, 621 F.2d 675, 681-82 (5th Cir. 1980)).  Because the Fourth Amendment rights allegedly violated were clearly established at the time of the search, Agent Harnen is not entitled to the protection of qualified immunity from plaintiff's claims at this stage of the proceedings.  Accordingly, Agent Harnen's motion to dismiss plaintiff's *Bivens* claims against him is due to be denied.

**E.**     **Agent Morrison's Motion to Dismiss**

Alabama Bureau of Investigation Agent Russell Morrison has also moved to dismiss the claims asserted against him under 42 U.S.C. § 1983 and the *Bivens* opinion.[64]

**1.**     **§ 1983 Claims**

Agent Morrison argues that § 1983 does not authorize a suit against him because he was not acting as a state official at the time of the events forming the

---

[64] *See* doc. no. 68.

basis of plaintiff's claims, but a *federal* officer acting under color of *federal* law.

As the Supreme Court explained in *American Manufacturers Mutual Insurance Co.*

*v. Sullivan*, 526 U.S. 40 (1999),

> [t]o state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that [he or she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of *state law*.  Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.

*Id*. at 49-50 (emphasis supplied) (internal punctuation marks and citations omitted);

*see also, e.g.*, *Focus on the Family v. Pinellas Suncoast Transit*, 344 F.3d 1263,

1276-77 (11th Cir. 2003) (same); *Almand v. DeKalb County, Georgia*, 103 F.3d

1510, 1513 (11th Cir. 1997) (holding that, in order to prevail on a civil rights

action under § 1983, a plaintiff must show that he or she was deprived of a federal

right by a person acting under color of *state* law).

Plaintiff's complaint alleges that Agent Morrison is "an individual who at all

times material to this suit was acting as a law enforcement officer in the line and

scope of his employment with [either] the Alabama Bureau of Investigation ('ABI')

*and/or* the United States in his capacity as an authorized federal agent of the

DEA."[65]  At this stage of the litigation, when discovery has been limited, this court

---

[65] Doc. no. 61, ¶ 7 (alteration and emphasis supplied).

cannot determine whether Agent Morrison was acting pursuant to the power he possessed as an officer of the ABI, or acting under the color of *federal* law. This aspect of defendant's motion, therefore, will be denied, but without prejudice to the defendant's right to reassert it if subsequent discovery uncovers facts supporting his argument.

### 2. Qualified immunity

Agent Morrison also argues that, regardless of whether it is ultimately determined that he was a state or federal actor, he still is entitled to the protection of qualified immunity from plaintiff's constitutional claims because he did not intentionally violate any clearly established rights of plaintiff.

### a. Do the facts alleged by plaintiff support a constitutional violation?

As noted above, the Eleventh Circuit has held that "[i]t is axiomatic that a warrantless search and seizure inside a residence is presumptively unreasonable." *Reed*, No. 08-10843, 2009 WL 567237, at *2. In this case, plaintiff has alleged that ABI Agent Morrison, in addition to DEA Agent Harnen and Deputy Sheriff McDaniel, violated his constitutional rights "under 'color of state law, by (i) instructing other law enforcement to enter plaintiff's home, and by (ii) personally entering plaintiff's property to serve a warrant intended for another individual

and/or home."[66]  Agent Morrison contends that he simply assisted in the execution of the search warrant, and that his role in the execution of the warrant was "a position of limited information."[67]  Given this role, he asserts that he reasonably relied upon a facially valid search warrant and the instruction provided by other law enforcement officers.  He consequently claims that plaintiff has pleaded insufficient facts to show that his participation in the execution of the search warrant violated plaintiff's constitutional rights.

This court finds that plaintiff sufficiently alleges that Agent Morrison violated his Fourth Amendment rights to remain free from governmental intrusion upon his personal property.  Because plaintiff's version of the events is presumed correct at this stage of the proceedings, this court declines to find that Agent Morrison was a mere line officer who did not direct the Huntsville SWAT team defendants to plaintiff's house for execution of the warrant.  *See Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1027-28 (9th Cir. 2002), *cert. granted on other grounds sub nom. Groh v. Ramirez*, 537 U.S. 1231, 123 (2003) (distinguishing between officers who lead the search and "are responsible for ensuring that they have lawful authority for their actions," and line officers who

---

[66] *Id.*, ¶ 41.  *See also id.*, ¶ 16 (alleging that Agent Morrison "participated at the scene in front of [plaintiff's] home to direct the Huntsville SWAT team to the home of [plaintiff]").

[67] Doc. no. 76 at 11.

"may accept the word of their superiors that they have a warrant and that it is valid"). Plaintiff's complaint indicates that Agent Morrison was the only federal officer at plaintiff's home, and this court has no facts before it describing Agent Morrison's role in the execution of the warrant and his efforts to confirm that he was executing the warrant at the correct house. Based on the allegations of the complaint, this court finds that a reasonable jury could conclude that it was objectively unreasonable for Agent Morrison to direct and/or conduct a warrantless search of plaintiff's home.

<b>b</b>.    <b>Were the rights allegedly violated "clearly established"?</b>

This court has already determined that plaintiff's right to be free from unreasonable warrantless searches of his house was clearly established. *See Hartsfield*, 50 F.3d at 955. Assuming that all of plaintiff's allegations are true, plaintiff's complaint contains sufficient allegations that Agent Morrison conducted an unreasonable warrantless search of plaintiff's home. Because plaintiff's complaint alleges violations of clearly established law against Agent Morrison, he is not entitled to qualified immunity from plaintiff's claims. Consequently, Agent Morrison's motion to dismiss plaintiff's constitutional claims against him is due to be denied.

**F**.    **The United States' Motion to Dismiss**

The United States moves to dismiss all claims against it under the Federal Tort Claims Act ("FTCA") for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).[68]  The government argues, first, that all claims against it that relate to the negligent conduct of Agents Harnen and Morrison are due to be dismissed because the discretionary function exception to the FTCA deprives this court of jurisdiction to entertain those claims.[69]  *See* 28 U.S.C. § 2680(a).  Second, the United States argues that the FTCA claims against it that relate to the conduct of Deputy McDaniel and the Huntsville SWAT team defendants are also due to be dismissed for lack of subject matter jurisdiction because those officers were not acting as employees of the United States during the execution of the search warrant.

"It is elementary that the United States, as sovereign, is immune from suits save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*,

---

[68] *See* doc. no. 70.  Because this court previously substituted the United States for Agent Harnen with respect to the state law negligence and wantonness claims against him, claims against the United States under the FTCA include those state law claims.

[69] Doc. no. 72 at 10 (arguing that "decisions made by federal law enforcement officers regarding (a) identifying and locating the residence subject to the search warrant; (b) procuring the search warrant; (c) briefing other law enforcement officers on the location of the residence subject to the search warrant; and (d) directing other law enforcement officers to execute the search warrant at Plaintiff's residence . . . . must be dismissed to the extent such policy judgments are challenged, because the discretionary function exception deprives this Court of jurisdiction to entertain the suit.").

445 U.S. 535, 538 (1980).  The FTCA is a waiver of this sovereign immunity that allows a claimant to recover damages against the United States for injuries caused by the negligent acts of governmental employees while acting within the scope of their employment.  *See* U.S.C. § 1346(b)(1).  This waiver does not, however, apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  Although a definition of "discretionary" does not exist, the Supreme Court has characterized the ultimate question as whether the "challenged acts . . . are of the nature and quality that Congress intended to shield from tort liability."  *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 813 (1984).  "The discretionary function exception is intended to prevent the courts from '"second-guessing" . . . administrative decisions grounded in social, economic, or political policy through the medium of an action in tort.'"  *United States Aviation Underwriters, Inc. v. United States*,  562 F.3d 1297, 1299 (11th Cir. 2009) (quoting *S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. at 814).

Because the United States has brought factual challenges to subject matter jurisdiction, the burden rests with plaintiff to prove that jurisdiction does exist.  *See OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002) (citing *Thomson v.*

*Gaskill*, 315 U.S. 442, 446 (1942) ("Accordingly, if a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof.")).   *See also United States Aviation Underwriters, Inc.*, 562 F.3d at 1299 ("By contending that the [plaintiffs'] claims are governed by the discretionary exception to the FTCA, the United States factually attacks our subject matter jurisdiction.").

### 1.   **Agents Harnen and Morrison and Deputy McDaniel**

Plaintiff has conceded that his claims against the United States under the FTCA relating to the conduct of DEA Agent Harnen are due to be dismissed under the discretionary function exception.[70]   *Cf. Williams v. United States*, No. 08-11397, 2009 WL 323074, at *3 (11th Cir. Feb. 10, 2009) (holding that, "because it is the mandatory duty of law enforcement agents to enforce the law, decisions as to how to best fulfill that duty are protected by the discretionary function exception"); *Mesa v. United States*, 123 F.3d 1435, 1438 (11th Cir. 1997) (holding that "the decisions regarding how to locate and identify the subject of an arrest warrant and regarding whether the person apprehended is in fact the person named in the warrant are discretionary in nature and involve an element of judgment or choice").

---

[70] *See* doc. no. 116 at 11 ("Mr. Jamar must concede that to the extent his complaint contains allegations of liability under the FTCA against the United States for acts or omissions committed by Harnen, those claims are due to be dismissed as protected discretionary conduct as contemplated by 28 U.S.C. § 2680(a).").

However, plaintiff did not expressly concede that his claims against the United States under the FTCA relating to the conduct of ABI Agent Morrison and Deputy Sheriff McDaniel are due to be dismissed.  Even so, this court finds that the claims alleging that Agent Morrison and Deputy McDaniel negligently and wrongfully directed the Huntsville SWAT team defendants to commit a warrantless search are also due to be dismissed under the discretionary function exception.[71] Accordingly, judgment will be entered in favor of the United States as to plaintiff's claims under the FTCA for the discretionary conduct of DEA Agent Harnen, ABI Agent Morrison, and Deputy Sheriff McDaniel.[72]

## 2.     Deputy Sheriff McDaniel and the Huntsville SWAT team defendants

The United States further argues that plaintiff's FTCA claims against it relating to the conduct of Madison County Deputy Sheriff McDaniel and the Huntsville SWAT team defendants in executing the warrant are due to be dismissed

---

[71] Plaintiff's negligence-based claims include his claims that Agent Morrison and Deputy McDaniel "acted without due care when they negligently and wrongfully caused the Huntsville SWAT Team defendants to illegally commit a warrantless search of Plaintiff's home without probable cause and exigent circumstances."  Doc. no. 61, ¶ 27.  Plaintiff also alleged that Agent Morrison and Deputy McDaniel "acted without due care when they wrongfully caused and directed the Huntsville SWAT Team defendants to illegally commit a warrantless search of Plaintiff's home without probable cause and exigent circumstances which constituted a trespass, invasion of privacy, and assault of Plaintiff's person."  *Id*., ¶ 62.

[72] Plaintiff's claims asserted against the United States alleging that Agent Morrison and Deputy McDaniel committed the state-law torts of trespass, invasion of privacy, and assault while acting as employees of the Government remain.  *See* doc. no. 61, ¶ 29.

55

for lack of subject matter jurisdiction because those defendants did not act as "employee[s] of the government" within the meaning of 28 U.S.C. § 2671.

As referenced above, the FTCA is a waiver of sovereign immunity for the acts or omissions of an "employee of the government acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b). The FTCA defines the phrase "employee of the government" as follows:

> "Employee of the government" includes (1) officers or employees of any federal agency, members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty under section 115, 316, 502, 503, 504, or 505 of title 32, and *persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation* . . . ."

28 U.S.C. § 2671 (emphasis supplied). If the act that forms the basis of FTCA claim was not committed by an "employee of the government," a court must dismiss the FTCA action for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See Means v. United States*, 176 F.3d 1376, 1380 (11th Cir. 1999) ("The central jurisdictional question under the FTCA remains whether the alleged tortfeasor is an 'employee of the government' and that determination is to be made by reference to the degree of physical control the government exercised.").

The Eleventh Circuit has established the "control test" to determine whether an individual is a governmental employee or an independent contractor. *See*

56

*Patterson & Wilder Constr. Co. v. United States*, 226 F.3d 1269, 1274 (11th Cir. 2000).   Under this test, "a person is an employee of the Government if the Government controls and supervises the day-to-day activities of the alleged tortfeasor during the relevant time."   *Id*. (citing *Means*, 176 F.3d at 1379 (in turn citing *Logue v. United States*, 412 U.S. 521, 526-32 (1973))).  The Eleventh Circuit has advised that "it is not necessary that the Government continually control all aspects of the individual's activities, so long as it has the authority to do so given the nature of the task."   *Id*.; *see also Logue*, 412 U.S. at 527-28 (the "critical factor" is "the authority of the principal to control the detailed physical performance" of the individual).  Thus, the question becomes whether the United States had the power or authority to control the actions of Deputy Sheriff McDaniel and the Huntsville SWAT team defendants that form the basis of plaintiff's tort claims of trespass, invasion of privacy, assault, and battery.

First, this court finds that the United States had the authority to control the actions of Deputy McDaniel and the Huntsville SWAT team defendants that form the basis of plaintiff's claims of *trespass* and *invasion of privacy*.[73]  The evidence

---

[73] Under Alabama law, the tort of "invasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use."  *Johnston v. Fuller*, 706 So. 2d 700, 701 (Ala. 1997).

presently before the court shows that Deputy McDaniel and the Huntsville SWAT team defendants were asked, at the request of Agent Harnen, to participate in the execution of the *federal* search warrant for the purpose of securing plaintiff's home and providing entry for a federal officer.[74]   The evidence of record further shows that the search of plaintiff's home was part of an Organized Crime Drug Enforcement Task Forces ("OCDETF") case that received federal funding and was to be prosecuted by the United States Attorney's office.[75]   Agent Harnen, with assistance from the United States Attorney's office, submitted the application and affidavit to obtain a search warrant for 13355 Honey Way, and he briefed Deputy McDaniel and the Huntsville SWAT team defendants on the execution of the search warrant.[76]   Significantly, Agent Harnen provided Deputy McDaniel and the Huntsville SWAT team defendants with a copy of the Google map on which he circled plaintiff's home as the place to execute the search warrant.[77]   Moreover, Agent Harnen's supervisor, Agent Borland, testified that, because plaintiff's house was circled by Agent Harnen, "that would be the only house [the Huntsville SWAT

---

[74] *See* doc. no. 117, Ex. A (Depositions of Sgt. Norris), at 75-76 and 84-87, 102; Ex. B (Deposition of Agent Borland) at 125-28.

[75] *Id.*, Ex. B, at 73, 78.

[76] *Id.*, Ex. A, at 101-02.

[77] *Id.*, Ex. A, at 103 (Sargent Norris testifying that Agent Harnen showed the Huntsville SWAT team defendants the house they were to search); Ex. B, at 94-97 (Agent Borland testifying that "I understand that [Agent Harnen] indicated that was the house to be searched").

team defendants] could go to on that street."[78]   Therefore, this court has jurisdiction

over plaintiff's FTCA claims based on the tort claims of trespass and invasion of

privacy.

On the other hand, this court finds that the limited evidence at this stage of

the litigation is unclear as to whether United States had authority or control over

the actions of Deputy McDaniel and the Huntsville SWAT team defendants while

they were *inside* plaintiff's home.   Specifically, the evidence that is presently

before the court does not establish whether Agent Harnen or other federal officers

instructed Deputy McDaniel and the Huntsville SWAT team defendants as to the

best method for entering the house, or the appropriate amount of force to use in

securing the house once entry was made.   *See Means*, 176 F.3d at 1379 (affirming

the district court's holding that the mere fact that the Federal Bureau of

Investigation briefed the Jefferson County SWAT team as to the circumstances

surrounding a search "'fall[s] short of supporting a finding that the F.B.I. had

control over or directed the actions taken or methods used by the county SWAT

team in entering and then securing the [plaintiffs'] residence'") (quoting the district

court).

---

[78] *Id.*, Ex. B (Deposition of Agent Borland), at 97; Ex. A, at 103-105 (Sargent Norris testifying that the Huntsville SWAT team defendants did not have discretion as to whether they would go to the house circled on the map or another house).

In sum, the motion of the United States to dismiss plaintiff's claims against it under the FTCA is due to be granted as to plaintiff's Federal Tort Claims Act claims alleging that DEA Agent Harnen, ABI Agent Morrison, and Deputy Sheriff McDaniel negligently and wrongfully caused other law enforcement officers to execute a warrantless search of plaintiff's home.  That motion is due to be denied as to all remaining claims against the United States.

## VI. CONCLUSION

Based on the foregoing, the City of Huntsville's motion to strike plaintiff's claim for punitive damages is due to be granted.  The City of Huntsville's motion to dismiss is due to be granted in part and denied in part.  The motion is due to be granted to the extent it seeks dismissal of plaintiff's state-law claims of wantonness, trespass, invasion of privacy and outrageous conduct against the City of Huntsville.  The motion is denied to the extent is seeks dismissal of plaintiff's state-law claims of assault and battery against the City of Huntsville.   The Huntsville SWAT team defendants' motion to dismiss is due to be granted in all aspects.

The motion to dismiss filed by Agent Harnen is due to be granted in part and denied in part.  The motion is due to be granted to the extent it seeks to dismiss plaintiff's claims pursuant to 42. U.S.C. § 1983.  The motion is due to be denied to

the extent it seeks the protection of the doctrine of qualified immunity for plaintiff's constitutional claims under *Bivens*. Agent Harnen's motion is also due to be denied as moot to the extent it seeks to dismiss plaintiff's state law claims against him for negligence and wantonness. The motion to dismiss filed by Agent Morrison is due to be denied in all aspects.

Lastly, the motion to dismiss filed by the United States of America is due to be granted in part and denied in part. The motion is due to be granted to the extent it seeks to dismiss plaintiff's FTCA claims alleging that Agent Harnen, Agent Morrison, and Deputy McDaniel negligently and wrongfully caused other law enforcement officers to execute a warrantless search of plaintiff's home. The motion is due to be denied to the remaining claims under the Federal Tort Claims Act.

An appropriate order and partial judgment consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 28th day of August, 2009.

_____
United States District Judge

61