IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| KENNETH WAYNE JAMAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | **5:08-cv-01145-AKK** |
| UNITED STATES OF ) | |
| AMERICA, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This action arose from injuries plaintiff Kenneth Wayne Jamar suffered during the execution of a search warrant by various federal, state, and local law enforcement agencies at his residence on June 27, 2006.  Doc. 1, Complaint. Plaintiff sued the United States of America, Drug Enforcement Administration Agent Francis J. "Rocky" Harnen, Jr. ("Agent Harnen"), the City of Huntsville, various City of Huntsville police officers, Alabama Bureau of Investigation Agent Russell Morrison ("Agent Morrison"), and Madison County Deputy Sheriff Eddie McDaniel ("Deputy McDaniel").  *Id*.  Deputy McDaniel is the only remaining defendant, and, for the reasons set forth below, his Motion for Summary Judgment, doc. 275, is GRANTED.

# I. SUMMARY JUDGMENT STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Id*. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir.

2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).

## II. FACTUAL BACKGROUND[1]

Deputy McDaniel served as a Deputy Sheriff of Madison County, Alabama, at all times relevant to this action. Doc. 277-1, McDaniel Dec., ¶ 3. As a Deputy Sheriff, he was part of the Madison-Morgan County Strategic Counterdrug Team, which began investigating the drug trafficking activities of an individual known as Oscar Salamon in 2005. *Id*. ¶ 4; Doc. 277-2, Norris Dep., at 13:16-14:16. The investigation ultimately became a federal investigation, and Agent Harnen obtained a Title III warrant to intercept Salomon's telephone calls.[2] Doc. 277-3, Harnen Dep., at 32:7-16; 351:23-352:8. Through these telephone conversations, an individual known as Jerome Wallace ("Wallace") became a person of interest. *Id*. at 32:7-33:3; 90:7-19. Surveillance of Wallace caused Agent Harnen to believe that Wallace lived in a particular house, that lacked visible house numbers and a mailbox, on a street known as Honey Way in Madison, Alabama. *Id*. at 32:7-33:10; 242:13-243:20. By searching driver's license records, vehicle

---

[1] The facts are presented in the light most favorable to plaintiff.

[2] Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510-2522, provides federal agencies the ability to obtain a warrant for interception of wire or oral communications that may provide evidence of offenses related to narcotic drugs.

registrations, and an information database known as SECURE USA, Agent Harnen identified Wallace's residential address as 13355 Honey Way. *Id*. at 38:14-39:9; 37:6-11. Agent Harnen called the local utility company to confirm that the house in question was in fact 13335 Honey Way, but this effort neither confirmed nor disproved Harnen's belief. *Id*. at 153:4-19.

On June 22 or 23, 2006, Agent Harnen gave Wayne Kamus, a Detective for the City of Madison police department, a Google Earth image of Honey Way with the house in question circled and asked him to determine whether the house had a visible house number. Doc. 277-1, McDaniel Dec., ¶ 5. In turn, Detective Kamus asked John Stringer, a patrol officer for the City of Madison police department, to check for a house number. Doc. 277-9, McDaniel Dep., at 29:1-16. Officer Stringer informed Detective Kamus that he did not see a house number, and Detective Kamus asked Deputy McDaniel to accompany him to Honey Way to look again. *Id*. at 30:1-8; Doc. 277-1, McDaniel Dec., ¶ 5. Based on descriptions Agent Harnen provided, Deputy McDaniel and Detective Kamus identified the house in question, but did not see a house number. Doc. 277-1, McDaniel Dec., ¶ 6. The house they observed is now known as 13389 Honey Way — the residence of plaintiff, who is Wallace's uncle. Doc. 277-15, Jamar Dep., at 12:14-23; 67:19-22.

On June 23, 2006, Agent Harnen applied for more than 30 federal arrest and search warrants as part of the Salomon investigation, including a search warrant for "the premises known as 13355 Honey Way, Madison (Limestone County), Alabama 35757." Doc. 277-3, Harnen Dep., at 30:7-32:6; Doc. 277-17 at 12. To the application, he attached the Google Earth image of Honey Way with the house now known as 13389 Honey Way circled. Doc. 277-3, Harnen Dep., at 30:7-32:6. United States Magistrate Judge Harwell G. Davis, III, issued the warrant for 13355 Honey Way. Doc. 277-7, Warrant, at 11. However, Judge Davis testified that he knew that Agent Harnen had difficulty confirming the street address of the house and, therefore, directed Agent Harnen to attach the Google Earth image to the warrant because "[he] intended the house identified on that aerial photograph to be the subject of the search regardless of the actual street address for that house." Doc. 277-17, Davis Dec.,¶ 6.

On June 26, 2006, Agent Harnen and City of Huntsville police Sargent Gerry Norris briefed federal, state, and local law enforcement officers to coordinate execution of the warrants. Doc. 277-5, Harnen Dep., at 298:19-299:11. Deputy McDaniel attended the briefing, and Sargent Norris assigned him to assist in the execution of the warrant for 13355 Honey Way. Doc. 277-1, McDaniel Dec., ¶¶ 8, 10; Doc. 277-5, Harnen Dep., at 302:16-304:5. As part of the briefing,

5

Agent Harnen and Sargent Norris projected the Google Earth image of Honey Way with 13389 Honey Way circled and told the officers "we're unclear about the address, you know, don't have any numbers on it, but this is the house we're going to." Doc. 277-5, Harnen Dep., at 300:9:14. Deputy McDaniel recognized the house as the same one he and Detective Kamus observed several days earlier. Doc. 277-1, McDaniel Dec., ¶ 11.

On the morning of June 27, 2006, Deputy McDaniel accompanied members of the Huntsville SWAT team and Agent Morrison, who DEA had deputized as a federal task officer for the search, to execute the search warrant. Doc. 277-1, McDaniel Dec., ¶ 14. As the SWAT team members exited their vehicles, Deputy McDaniel pointed to 13389 Honey Way, identifying it as the house to search. *Id*. He then walked around the house to watch the back door. Doc. 277-9, McDaniel Dep., at 91:17-23. The SWAT team entered 13389 Honey Way and discharged their firearms, seriously wounding plaintiff. *Id*. at 98:12-21. Significantly, it is undisputed that Deputy McDaniel neither entered the house nor discharged his firearm. Doc. 276 at 16 ¶¶ 64-65; Doc. 290 at 6 ¶¶ 64-65.

### III.  ANALYSIS

Plaintiff brings a 42 U.S.C. § 1983 claim against Deputy McDaniel, asserting that McDaniel violated his Fourth Amendment right to be free from

unreasonable searches and seizures.[3] Doc. 180 ¶¶ 34-46. Plaintiff specifically alleges that Deputy McDaniel violated his Fourth Amendment rights by "instructing other law enforcement to enter plaintiff's home." Doc. 180 ¶ 36. Deputy McDaniel counters that he is entitled to qualified immunity based on the unique facts and circumstances attendant to the execution of the search warrant. Doc. 276 at 17. The court agrees.

Section § 1983 creates a cause of action against persons who violate the Constitution and federal laws while acting under state government authority. Specifically, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C § 1983. Thus, "[§] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (plurality) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)). Here, as noted above, plaintiff's § 1983 claim alleges violations of his Fourth Amendment rights.

---

[3]The court previously dismissed plaintiff's claims under Federal Tort Claims Act relating to the acts and omissions of Deputy McDaniel. Doc. 125 at 4 (Order of August 28, 2009).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 129 S. Ct. at 815.

A defendant asserting that he is entitled to qualified immunity must first establish that he was engaged in a discretionary duty during the event in question, *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008), which is not disputed in this case. *See* doc. 180 ¶ 9 (alleging that Deputy McDaniel acted "at all times material to this action . . . as a law enforcement officer in the line and scope of is employment . . . ."). The burden then shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Id*. In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence for addressing qualified-immunity claims: (1) the court first decides whether the facts alleged or shown by a plaintiff make out a violation of a constitutional right; and (2) the

court then decides whether the right was "clearly established" at the time of the alleged violation. *Id*. at 201.  The Supreme Court held recently that courts are no longer required to consider these questions in order.  *See Pearson*, 129 S. Ct. at 818.  Indeed, in this case, the court need not address the first inquiry because, even if Deputy McDaniel's actions violated plaintiff's Fourth Amendment rights, plaintiff cannot establish that the law was so clearly established as to give Deputy McDaniel notice that his conduct violated such rights.  *See id.* at 821 ("An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment.").

Plaintiff argues that case law from the Ninth Circuit and this circuit clearly established that Deputy McDaniel's direction of other officers to search his house without ensuring that the house matched the address on the warrant violated his Fourth Amendment rights.  Doc. 290 at 11-12.  Deputy McDaniel, of course, denies that his conduct violated any clearly established laws.

To determine whether a constitutional right was clearly established at the time of an alleged violation, the Eleventh Circuit instructs that "'[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1266-67 (11th Cir. 2010) (quoting *Saucier*, 533 U.S. at 202).

Thus, "the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Maggio v. Sipple*, 211 F.3d 1346, 1354 (11th Cir. 2000) (quotation marks and citations omitted). The Eleventh Circuit recognizes three instances that create fair and clear notice of unlawful conduct:

> (1) the words of the pertinent federal statute or constitutional provision may be so specific as to clearly establish the law even in total absence of judicial decisions interpreting the law, *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002); (2) "some broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts," *id*. at 1351; and (3) most commonly, when we lack explicit statutory or constitutional pronouncements and broad case holdings, we look to precedential cases that are tied to their particular facts. *Id.* at 1351-52. When caselaw is needed, we look to decisions of the U.S. Supreme Court, this Court, and, where applicable, the highest court of the pertinent state. *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1032-33 n.10 (11th Cir. 2001).

*Grider*, 618 F.3d at 1267 n.39.

Plaintiff contends that "a district court may use an opinion from a different court of appeals to find clearly established rights," doc. 290 at 11 n.1, and asserts first that in 1992, the Ninth Circuit clearly established that officers leading the execution of a search warrant "'must actually read the warrant and satisfy themselves that they understand its scope and limitations, and that it is not

10

defective in someway.'" Doc. 290 at 11 (quoting *Ramirez v. Butte-Silver Bow Cnty.*, 298 F.3d 1022, 1027 (9th Cir. 1992)). Deputy McDaniel responds that *Ramirez* is irrelevant because "[i]n this circuit, the law can be 'clearly established' for qualified immunity purposes *only* by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega City Board of Education*, 115 F.3d 821, 827 n.4 (11th Cir. 1997) (emphasis added); *see also Youmans v. Gagnon*, 626 F.3d 557, 565 (11th Cir. 2010) (noting that "in the absence of controlling precedent, cases decided outside this Circuit can buttress our view that the applicable law was *not* already clearly established") (emphasis added). Because *Ramirez* is an opinion outside this circuit, it does not constitute clearly established law that placed Deputy McDaniel on notice "that what he [was] doing violated federal law." *Maggio*, 211 F.3d at 1354. Stated another way, the court need not consider whether Deputy McDaniel violated any rights of the plaintiff that the Ninth Circuit established in *Ramirez.*

However, in addition to *Ramirez*, plaintiff relies also on *Hartsfield v. Lemacks*, 50 F.3d 950 (11th Cir. 1995), to assert that the law was clearly established that an officer leading a search of wrong house "when [he] had done nothing to make sure he was searching the house described in the warrant –

11

violate[s] the law." 50 F.3d at 955. In *Hartsfield*, an officer observed a confidential informant purchase drugs at 5108 Middlebrooks Drive and subsequently procured a search warrant for that address. *Id*. at 951. The next day, the officer erroneously led other officers in the execution of the warrant at 5128 Middlebrooks Drive. *Id*. at 951-52. The homeowners of 5128 Middlebrooks Drive brought § 1983 claims against all the officers, alleging violations of their Fourth Amendment rights to be free from unreasonable searches and seizures. *Id*. at 952.

The Eleventh Circuit held that the lead officer, who procured the warrant and led the other officers, shed his qualified immunity while the other officers did not. *Id*. at 955-56. The court specifically held that "all reasonable police officers should have known that [the lead officer's] acts – searching the wrong residence when he had done nothing to make sure he was searching the house – described in the warrant – violated the law." *Id*. at 955. In reaching this conclusion, the court particularly noted that the numbers on the two houses were clearly marked and that "simply checking the warrant would have avoided the mistaken entry." *Id.* Further, the court contrasted the lead officer's conduct with the conduct of the officers in *Maryland v. Garrison*, 480 U.S. 79 (1987), who accidentally searched the wrong apartment, but were entitled to qualified immunity because they

undertook "'a reasonable effort to ascertain and identify the place intended to be searched within the meaning of the Fourth Amendment.'"[4] *Id*. at 954-55 (quoting *Garrison*, 480 U.S. at 88-89). The *Hartsfield* court distinguished the other officers' conduct by noting that "nothing in the record indicates that [other] officers acted unreasonably in following [the lead officer's] lead, or that they knew or should have known that their conduct might result in a violation of [the plaintiff's] Fourth Amendment rights." 50 F.3d at 956. Thus, at best, *Hartsfield* clearly established that an officer who obtains a warrant for a particular residence *and* then "[does] nothing to make sure that he . . . [leads] other officers to the correct residence," is not entitled to the protections of qualified immunity. 50 F.3d at 955.

---

[4] "In *Garrison*, the officer: (1) went to the premises to see if it matched the description given by an informant; (2) checked with the Baltimore Gas and Electric Company to ascertain in whose name the third floor apartment was listed; and (3) checked with the Baltimore Police Department to make sure that the description and address of the suspect matched the information provided by the informant. *Garrison*, 480 U.S. at 81-82, 85-86 n. 10, 107 S. Ct. at 1015, 1017 n.10. Furthermore, the police in *Garrison* encountered both Harold Garrison and the original suspect, Lawrence McWebb, at the building and neither of them indicated to police that there were two apartments on the same floor. *Id.* at 81-82 n.2, 107 S. Ct. at 1015 n.2."

*Hartfield*, 50 F.3d at 955 n.11.

The Eleventh Circuit has "said many times that 'if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.'" *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000) (quoting *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997)). Indeed, "[a]ny case law that a plaintiff relies upon to show that a government official has violated a clearly established right must pre-date the officer's alleged improper conduct, involve materially similar facts, and 'truly compel' the conclusion that the plaintiff had a right under federal law." *Ensley v. Soper*, 142 F.3d 1402, 1406 (11th Cir. 1998) (quoting *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994)). Here, *Hartsfield* cannot be said to involve materially similar facts or truly compel a conclusion that Deputy McDaniel violated plaintiff's Fourth Amendment rights. Instead, the record indicates that Deputy McDaniel's conduct was more similar to the officers who were led to the wrong residence. Deputy McDaniel did not procure the search warrant, and Agent Harnen repeatedly directed him to search the house circled on the Google Earth image – 13389 Honey Way. Moreover, unlike the facts in *Hartsfield*, the house searched matched the image attached to the warrant and lacked visible house numbers to allow Deputy McDaniel to reasonably avoid a mistaken entry.

Thus, even if plaintiff has alleged a violation of his Fourth Amendment rights against unreasonable search and seizure, in light of the unique facts that were provided to Deputy McDaniel and which led him directly to plaintiff's house, he is entitled to qualified immunity. Accordingly, plaintiff's § 1983 claims against Deputy McDaniel must fail.

## IV. CONCLUSION

For the foregoing reasons, Deputy McDaniel's motion for summary judgment, doc. 275, is GRANTED. The Clerk is directed to close this action.

**DONE** and **ORDERED** this 15th day of April, 2011.

_____
 **ABDUL K. KALLON**
 UNITED STATES DISTRICT JUDGE